**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| MARTI ECKLOFF,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. 2:17-cv-01049-RFB-BNW<br><br>**ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff Marti Eckloff's Motion for Remand / Reversal, ECF No. 16, and Defendant Nancy A. Berryhill's Cross-Motion to Affirm, ECF No. 19.

For the reasons discussed below, the Court finds that the ALJ's opinion contains legal error that is not harmless. The Court finds that the credit-as-true rule applies to support a finding of disability. Therefore, the Court grants Plaintiff's motion and remands to Defendant for an award of benefits.

## II. BACKGROUND

On March 18, 2013, Plaintiff completed an application for disability insurance benefits alleging disability since January 25, 2012. AR 20. Plaintiff was denied initially on June 26, 2013 and upon administrative reconsideration on January 5, 2014. AR 20. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and appeared on June 2, 2015. AR 20. In an opinion dated August 11, 2015, ALJ Christopher R. Daniels found Plaintiff not disabled. AR 20–28. The

///

Appeals Council denied Plaintiff's request for review on February 15, 2017, rendering the ALJ's decision final. AR 1–3.

The ALJ followed the five-step sequential evaluation process for determining Social Security disability claims set forth at 20 C.F.R. § 404.1520(a)(4). At step one, that ALJ found that Plaintiff has not engaged in substantial gainful activity since January 25, 2012, the alleged onset date. AR 22. At step two, the ALJ found that Plaintiff has the following severe impairments: deep vein thrombosis and history of colon cancer. AR 22–24. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal a listed impairment. AR 24.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). AR 24–27. Based on this RFC, the ALJ found at step four that Plaintiff is capable of performing her past relevant work as a telephone operator. AR 27.

### III. LEGAL STANDARD

42 U.S.C. § 405(g) provides for judicial review of the Commissioner's disability determinations and authorizes district courts to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In undertaking that review, an ALJ's "disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007)) (quotation marks omitted).

"If the evidence can reasonably support either affirming or reversing a decision, [a reviewing court] may not substitute [its] judgment for that of the Commissioner." Lingenfelter, 504 F.3d at 1035. Nevertheless, the Court may not simply affirm by selecting a subset of the evidence supporting the ALJ's conclusion, nor can the Court affirm on a ground on which the ALJ did not rely. Garrison, 759 F.3d at 1009–10. Rather, the Court must "review the administrative

record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion," to determine whether that conclusion is supported by substantial evidence. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Id. When reviewing the assignment of weight and resolution conflicts in medical testimony, the 9th Circuit distinguishes the opinions of three types of physicians: (1) treating physicians; (2) examining physicians; (3) neither treating nor examining physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The treating physician's opinion is generally entitled to more weight. Id. If a treating physician's opinion or ultimate conclusion is not contradicted by another physician, "it may be rejected only for 'clear and convincing' reasons." Id. However, when the treating physician's opinion is contradicted by another physician, the Commissioner may reject it by "providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. A treating physician's opinion is still owed deference if contradicted and is often "entitled to the greatest weight . . . even when it does not meet the test for controlling weight." Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007). Because a treating physician has the greatest opportunity to observe and know the claimant as an individual, the ALJ should rely on the treating physician's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). However, the ALJ may reject conclusory opinions in the form of a checklist containing no explanations for the conclusions. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

When a treating physician's opinion is not assigned controlling weight, the ALJ considers specific factors in determining the appropriate weight to assign the opinion. Orn, 495 F.3d at 631. The factors include the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; the amount and quality of evidence supporting the medical opinion; the medical opinion's consistency with the record as a whole; the specialty of the physician providing the opinion; and, other factors which support or contradict the opinion. Id.; 10 C.F.R § 404.1527(c). The ALJ must provide a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and [make] findings" rather

than state mere conclusions for dismissing the opinion of a treating physician. Reddick, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ errs when he fails to explicitly reject a medical opinion, fails to provide specific and legitimate reasons for crediting one medical opinion over another, ignores or rejects an opinion by offering boilerplate language, or assigns too little weight to an opinion without explanation for why another opinion is more persuasive. Garrison, 759 F.3d at 1012–13.

When determining the credibility of a claimant's testimony, the ALJ engages in a two-step analysis. Id. at 1014–15. First, the claimant must have presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1035–36 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)). The claimant does not need to produce evidence of the symptoms alleged or their severity, but she must show the impairments could reasonably cause some degree of the symptoms. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, the ALJ determines the credibility of the claimant's testimony regarding the severity of her symptoms. Garrison, 759 F.3d at 1014–15. Unless affirmative evidence supports a finding of malingering, the ALJ may only reject the claimant's testimony by providing "specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

The Social Security Act has established a five-step sequential evaluation procedure for determining Social Security disability claims. See 20 C.F.R. § 404.1520(a)(4); Garrison, 759 F.3d at 1010. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." Garrison, 759 F.3d at 1011. Here, the ALJ resolved Plaintiff's claim at step four.

**IV. DISCUSSION**

**A. Weighing of Treating Source**

Plaintiff argues that the ALJ erred in his weighing of the opinion of Michael Coy, D.O. The ALJ gave "little weight" to the Treating Physician Questionnaire completed by Dr. Coy on May 27, 2015. AR 26. At the time of the ALJ's decision in 2015, Dr. Coy had been Plaintiff's

treating physician for ten years. AR 784–86. Medical evidence in the record of Dr. Coy treating Plaintiff dates back to 2008. AR 252–53, 255, 258. No other medical opinion regarding Plaintiff's limitations is present in the record. Because Dr. Coy is Plaintiff's treating physician and is not contradicted by another physician's opinion, his opinion could only be rejected for "clear and convincing reasons." Lester, 81 F.3d at 830.

The ALJ gave four reasons for giving little weight to Dr. Coy's medical opinion. AR 26. First, the ALJ wrote that the limitations assessed by Dr. Coy were "based on the claimant's lumbar fracture, which was not diagnosed until January 2015." AR 26. Second, the ALJ noted that Dr. Coy is a general practitioner whose "opinion rests on an assessment of impairments outside his area of expertise." AR 26. Third, the ALJ observed that "[t]he possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another" and that "patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension." AR 26. The ALJ opined that such motives were "more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case." Fourth, the ALJ found "no accompanying analysis of objective justification" for Dr. Coy's opinion, which the ALJ found to be "inconsistent with the rest of the record." AR 26.

These reasons constitute reversible error. First, while the diagnosis of Plaintiff's lumbar fracture in January 2015 could affect the ALJ's onset date determination, it would not affect the disability determination because Plaintiff meets the insured status requirements of the Social Security Act though September 30, 2017. Dr. Coy specifically opined the Plaintiff's impairments lasted or could be expected to last at least twelve months. AR 784. Because Plaintiff continued to be eligible for benefits in 2015, the ALJ could not discount evidence of disability just because it may have begun after Plaintiff's alleged 2012 onset date. Second, the Ninth Circuit has made clear that a treating physician's opinion may not be discounted on the basis that he is a general practitioner rather than a specialist. See Lester, 81 F.3d at 833. Third, and similarly, the ALJ is not permitted to assume that a physician has lied or exaggerated to help a claimant collect benefits

absent evidence of actual improprieties. Id. at 832; accord Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). Here, the ALJ merely speculated improperly as to the "possibility" of collusion between Dr. Coy and Plaintiff, which the ALJ deemed more likely due to purported discrepancies between the evidence of record and the questionnaire. Fourth, however, the ALJ did not identify what discrepancies exist between Dr. Coy's medical opinion and the rest of the evidence of record. The ALJ failed to explain clearly and convincingly exactly how and why his assessment of the record differed from Dr. Coy's to support a finding of non-disability. Embrey v. Bowen, 849 F.2d 418, 421–22 (9th Cir. 1988). ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.")

Because Dr. Coy's opinion supports a disability finding if it is given controlling weight, the errors are not inconsequential to the ALJ's finding of non-disability. Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015). Dr. Coy opined that Plaintiff could not tolerate even low stress, that Plaintiff would often need to take unscheduled breaks during an 8-hour workday lasting an average of one hour, that she could stand and walk less than two hours, and that she would be absent from work more than four days per month. AR 784–86. These limitations are not consistent with the ability to perform sedentary work, which requires the ability to stand and walk for two hours, or to sustain any work on a full-time basis, as discussed further below.

**B. Substantial Evidence in Support of RFC**

Plaintiff argues that no evidence supports the ALJ's RFC determination. The ALJ found that Plaintiff has the RFC to perform the full range of sedentary work. Pursuant to Social Security regulations:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). "Occasionally" is defined as occurring up to one-third of the time, and those capable of sedentary work must be able to stand or walk for up to two hours of an eight-hour workday and to sit for up to six hours of an eight-hour workday. SSR 83-10.

As Plaintiff identifies, no physician's opinion supports this RFC finding, nor is Plaintiff's testimony consistent with this RFC. Dr. Coy provides the only medical RFC opinion on record. The ALJ was only permitted to differ from Dr. Coy's findings by clear and convincing reasons supported by substantial evidence, which the ALJ did not provide.

**C. Step Two**

Plaintiff argues that the ALJ erred in excluding her lumbar problems as a severe impairment at step two. The ALJ found that "[t]he claimant's lumber compression and degenerative changes, as well as her right foot problems, have not been present for more than 12 months and, therefore, are non-severe impairments." AR 23. However, as discussed above, because Plaintiff meets the insured status requirements of the Social Security Act though September 30, 2017, the ALJ needed to evaluate also whether her lumbar compression and degenerative changes *could be expected to last* for 12 months. 20 C.F.R. § 404.1505(a). The ALJ erred in failing to evaluate Plaintiff's lumbar compression and degenerative changes to determine whether these impairments could be expected to last for a continuous period of not less than 12 months.

**D. Plaintiff's Credibility Finding**

Plaintiff argues that the ALJ improperly rejected Plaintiff's subjective symptom testimony. The ALJ found that, while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. AR 25.

As the ALJ did not find evidence of malingering, the ALJ could only reject Plaintiff's testimony regarding the severity of her symptoms with specific, clear, and convincing reasons. Garrison, 759 F.3d at 1014–15. "The clear and convincing standard is the most demanding required in Social Security cases." Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). The ALJ was required to identify with specificity "what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834.

/ / /

The ALJ cited two reasons for discrediting Plaintiff's testimony. First, the ALJ found that Plaintiff misrepresented why she had ceased working:

> In her Adult Disability Report, she alleges that she stopped working as a telephone operator at a hotel and casino on January 25, 2012 due to her conditions (Exhibit 2E/2-3). At the hearing, she testified that she was put on a part-time basis with different shifts due [to] the economy but she also stated that she was unable to work a regular shift. . . .
> As discussed above, there is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments. The fact that the claimant provided inaccurate information on a matter so integral to determining disability suggests that much of what the claimant has alleged may be similarly unreliable.

AR 25–26. Second, the ALJ found that Plaintiff "has reported intact activities of daily living" and "testified that she would be able to perform a sedentary job if she had the option to stand every once in a while," inconsistent with disabling limitations. AR 26. Third, the ALJ found Plaintiff's statements to be, at least in part, inconsistent with the objective medical evidence:

> The claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment, because they are not supported by the objective medical signs and findings of the record as a whole under SSR 96-7p.

AR 26.

None of these reasons are clear and convincing. The ALJ's first reason is not convincing because the record does not support a finding that Plaintiff made inconsistent or misleading statements. In her disability application, Plaintiff selected from a drop-down list that she stopped working because of her conditions. AR 147. The application only provides the following options in response to the question "Why did you stop working?": "Because of my condition(s)" or "Because of other reasons." Disability Report – Adult, SSA-3368-BK. This form answer is entirely consistent with the relevant portion of Plaintiff's testimony, as follows:

> Q  . . . why did you have to step down from supervising?
> A  Because I got sick.
> Q  Okay. Were you missing work prior to leaving though?
> A  Yes.
> Q  All right, and you quit. Why did you leave the job in 2012?
> A  2012, I left the job because due to the cuts in the economy, they put me on

|   |   |   |
|---|---|---|
| | | extra – I was a full-time employee and they put me on part-time basis and I had to work days, swing, graveyard and my health was deteriorating and I wasn't capable of fulfilling all my duties. |
| | Q | If they had changed – made you – kept you on a regular shift, do you think you could have continued with that work? |
| | A | No, I don't think so due to my health. I don't think I would. |
| | Q | And what problems were you having that caused you to be unable to work? |
| | A | I was on Coumadin therapy. I was diagnosed with blood disorder called high homocysteine. |
| | Q | Okay, and when did the blood disorder get diagnosed? |
| | A | 2003. |
| | Q | Okay. Well, you worked for seven or eight years after that. So what happened to cause it to be that you couldn't work? |
| | A | I started getting a lot of colds and allergic to a lot of stuff and – |
| | Q | Okay. |

Plaintiff testified that in 2012, her schedule became part-time and irregular and her health was deteriorating such that she was not capable of fulfilling her duties. While she suggested that the irregular schedule contributed to her deteriorating health, she also testified that she does not believe she could have maintained a regular shift due to her health at that time. Even to the extent Plaintiff testified that factors other than disability contributed to her leaving her job in 2012, Plaintiff also plainly testified that her disability was at least one reason for leaving. Her testimony cannot be considered inconsistent with her form-mandated, necessarily-simplified response to the question, "Why did you stop working?" where the only options are "Because of my condition(s)" or "Because of other reasons."

The ALJ's second reason is not convincing because the record does not support the ALJ's characterization that Plaintiff "reported intact activities of daily living" or "testified that she would be able to perform a sedentary job if she had the option to stand every once in a while." AR 26. Plaintiff's function report, the document to which the ALJ cited in support of his finding that Plaintiff reported intact activities of daily living, does not describe intact activities of daily living. It documents an average day in which Plaintiff struggles to wake up, can eat a light breakfast and do light housework, can shower and groom but with difficulty, performs only five minutes of exercise, eats a frozen meal, and does not leave her home. AR 158; <u>see also</u> AR 42 (Plaintiff's consistent hearing testimony). Plaintiff also describes an inability to sleep more than four to five

hours per night and difficulty using common objects like hair dryers and razors. AR 159, 165. While Plaintiff also reported the intact ability to perform certain activities of daily living, the ALJ was not permitted to cherry-pick only the details from the function report that support a denial of benefits and conclude that her activity of daily living are fully intact. See Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014). Additionally, the Court does not find that Plaintiff testified that she would be able to perform a sedentary job. The relevant portion of Plaintiff's testimony reads as follows:

> Q  Okay. Let's assume you were given a job where you could sit down or stand up as you pleased. Could you perform that type of a job?
> A  As I pleased? Yes, if I – yeah, if I could sit down every 10, 15 minutes or get up every 10, 15 minutes, yes, I would.
> Q  Okay, and by getting up every 10 minutes, what would you be doing?
> A  I would be – if I could answer the phone or do things like that, yeah, I could do that job.
> Q  So every 10 minutes, how long would you need before going back to your workstation? How long of a break would you need?
> [ALJ conversation with counsel]
> Q  So Ms. Eckloff, you testified that you – after 10 minutes, you would need to stand up.
> A  Yes.
> Q  Okay. Would you also need to leave the workstation?
> A  With the medications that I've been taking, yes, I need to go to the restroom. I need to, you know, make sure that I, you know, take care of my needs.
> Q  Okay. So in a job where you could stand up or sit down as you pleased, how often would you need to leave the workstation?
> A  Probably every hour on the hour tops.
> Q  Every hour? Okay, and how long of a break would you need every hour?
> A  I would say 15 to 20 minutes.
> Q  And what would you be doing for that 15 to 20 minutes?
> A  Going to the restroom, drinking water, having my medication, making sure that I stretch my legs.

AR 46–48. The entirety of Plaintiff's statements makes clear that when Plaintiff testified that she could do a job where she could "sit down every 10, 15 minutes or get up every 10, 15 minutes," she meant that she would need the break to take care of her physical needs, not that she could work continuously while alternating sitting and standing. Because these characterizations of Plaintiff's statements are not supported by the record, the Court does not find these reasons convincing for discrediting Plaintiff.

Lastly, the ALJ's third reason is neither clear nor convincing because the ALJ may not discredit Plaintiff's subjective symptomology reporting solely on the basis that the objective medical findings do not support the degree of symptom alleged. Smolen, 80 F.3d at 1282.

### E. Remand for Benefits

The Ninth Circuit has established that where no outstanding issues need be resolved, and where the ALJ would be required to award benefits on the basis of the record if the claimant's testimony were credited, the Court will take the claimant's testimony as true and remand for an award of benefits. Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1401 (9th Cir. 1988). The Circuit has devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose;
> (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and
> (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020 (9th Cir. 2014).

The Court finds that the record has been fully developed and further administrative proceedings would serve no useful purpose. The Court further finds that, for the reasons stated earlier in this order, the ALJ has failed to provide sufficient reasons for rejecting the opinion of treating physician Dr. Coy. Lastly, the Court finds that if the improperly discredited evidence were credited as true, Plaintiff would be necessarily found disabled on remand. For example, vocational experts regularly opine that someone who would miss four or more days of work per month is unemployable. See, e.g., Moe v. Berryhill, 731 F. App'x 588, 592 (9th Cir. 2018) (unpublished); Burt v. Comm'r of Soc. Sec. Admin., 63 F. App'x 305, 306 (9th Cir. 2003) (unpublished); Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012); see also AR 50 (vocational expert's testimony in this case that attendance is very important for the type of work identified in his testimony).

In crediting Dr. Coy's opinion and remanding for an award of benefits, the Court must also determine the appropriate onset date. Though Dr. Coy opined that the limitations described in his

opinion date back to 2003, this estimate predates any of the medical evidence of record and is therefore not supported by substantial evidence. As the ALJ noted, Dr. Coy bases his assessment on Plaintiff's lumbar fracture, diagnosed in January 2015. AR 26, 784. However, the Court finds that at the time of Plaintiff's lumbar fracture diagnoses on January 12, 2015, AR 728–29, the medical evidence of record already demonstrated months of pain and gait abnormality related to a fall in September 2014. See AR 738 (noting Plaintiff's limp and extreme gait abnormality in October 2014); AR 734 (continued noting of limp and extreme gait abnormality in December 2014); see also AR 756 (noting, in May 2015, that back pain has been continuous and increasing since Plaintiff's fall in September 2014, later diagnosed as resulting in a compression fracture). Dr. Coy found that Plaintiff's impairments lasted or could be expected to last at least twelve months, AR 784, and the medical evidence documents pain that was severe, continuous, and increasing over time as of May 2015, eight months after the onset of symptoms, AR 756. The Court therefore finds that a September 30, 2014 onset date is supported by substantial evidence.

### V.  CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Motion for Remand / Reversal (ECF No. 16) is GRANTED and Defendant's Cross-Motion to Affirm (ECF No. 19) is DENIED.

**IT IS FURTHER ORDERED** that this matter is remanded to Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, for an award of benefits with a disability onset date of September 30, 2014.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter a final judgment in favor of Plaintiff, and against Defendant. The Clerk of Court is instructed to close the case.

**DATED**: June 9, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**